1  Richard A. Clark
   State Bar No. 39558
2  (rclark@pmcos.com)
   Steven R. Platt
3  State Bar No. 245510
   (splatt@pmcos.com)
4  PARKER, MILLIKEN, CLARK, O'HARA
   & SAMUELIAN. P.C.
5  555 S. Flower Street, 30th Floor
   Los Angeles, CA 90071
6  Telephone: (213) 683-6500
   Facsimile:  (213) 683-6669
7

8  Joe G. Hollingsworth (*pro hac vice* application pending)
   DC Bar No. 203273
9  (jhollingsworth@hollingsworthllp.com)
   Katharine R. Latimer (*pro hac vice* application pending)
10 DC Bar No. 405137
   (klatimer@hollingsworthllp.com)
11 Eric G. Lasker (*pro hac vice* application pending)
   DC Bar No. 430180
12 (elasker@hollingsworthllp.com)
   HOLLINGSWORTH LLP
13 1350 I Street, N.W.
   Washington, DC  20005
14 Telephone:  (202) 898-5800
   Facsimile:  (202) 682-1639
15

16 Attorneys for Defendant
   MONSANTO COMPANY
17

18            UNITED STATES DISTRICT COURT

19         SOUTHERN DISTRICT OF CALIFORNIA

20 EMANUEL RICHARD GIGLIO,          | **C.V. NO.: 3:15-cv-2279-BTM-NLS**

21            Plaintiff,            | **MONSANTO COMPANY'S
                                    | MEMORANDUM OF POINTS AND
22      v.                         | AUTHORITIES IN SUPPORT OF
                                    | MOTION TO DISMISS PLAINTIFF'S
23 MONSANTO COMPANY,               | COMPLAINT [FILED
                                    | CONCURRENTLY WITH NOTICE
24            Defendant.           | OF MOTION]

25                                 | **JURY TRIAL DEMANDED**

26                                 | Hearing Date: December 11, 2015
27                                 | Time: 11:00 a.m.
                                   | Judge: Barry T. Moskowitz
28                                 | Courtroom: 15B

        MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

Page

FACTUAL BACKGROUND ................................................................................. 1

LEGAL STANDARD ......................................................................................... 5

ARGUMENT. ................................................................................................. 5

I.    Plaintiff's Failure To Warn Claims Are Preempted Under FIFRA. ...... 5

II.   Plaintiff's Non-Warnings Design Defect Claims Are Barred By
      Restatement (Second) Of Torts § 402A. ............................................. 10

III.  Plaintiff Fails To Adequately Plead Negligent Misrepresentation. ..... 16

IV.   Plaintiff Fails To Adequately Plead Breach Of Express Warranty .... 18

CONCLUSION. ............................................................................................. 20

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Ackerman v. American Cyanamid Co.*,
   586 N.W.2d 208 (Iowa 1998) ............................................................. 11

6

7
*Anderson v. Owens-Corning Fiberglas Corp.*,
   810 P.2d 549 (Cal. 1991) ................................................................... 13

8

9
*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
   70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007) ........................................ 16

10

11
*Arias v. DynCorp*,
   928 F. Supp. 2d 10 (D.D.C. 2013) ....................................................... 3

12
*Artiglio v. Superior Court*,
   27 Cal. Rptr. 2d 589 (Cal. Ct. App. 1994) ........................................ 13

13

14
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 5

15

16
*Authement v. Ingram Barge Co.*,
   977 F. Supp. 2d 606 (E.D. La. 2013) ................................................ 13

17

18
*Bates v. Dow Agrosciencies LLC*,
   544 U.S. 431 (2005) .....................................................................*passim*

19

20
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 5, 6

21
*Borel v. Fibreboard Paper Products Corp.*,
   493 F.2d 1076 (5th Cir. 1973) ........................................................... 13

22

23
*Brown v. Superior Court (Abbott Labs.)*,
   227 Cal. Rptr. 768 (Cal. Ct. App. 1986) *review granted and opinion*
   *superseded*, 723 P.2d 1248 (Cal. 1986), *aff'd sub nom. Brown v.*
   *Superior Court*, 751 P.2d 470 (Cal. 1988) ........................ 10, 12, 13,15

24

25

26
*Canifax v. Hercules Powder Co.*,
   46 Cal. Rptr. 552 (Cal. Ct. App. 1965) ............................................. 10

27

28

*Carlin v. Superior Court*,
   920 P.2d 1347 (Cal. 1996)....................................................................... 11

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) ................................................................................. 7

*Cruz v. Sears*,
   No. 12-CV-00623-H (BGS), 2012 WL 2923323 (S.D. Cal. Jan. 18,
   2012) ...................................................................................................... 18

*Daniels v. Combustion Eng'g, Inc.*,
   583 S.W.2d 768 (Tenn. Ct. App. 1978) ............................................... 13

*Gauthier v. AMF, Inc.*,
   788 F.2d 634 (9th Cir. 1986) ................................................................. 12

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999)............................................... 16

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993)................................................................... 12

*Hall v. Ashland Oil Co.*,
   625 F. Supp. 1515 (D. Conn. 1986) .................................................... 13

*Hammarlund v. C.R. Bard, Inc.*,
   No. 2:15-cv-05506-SVW-JEM, 2015 WL 5826780 (C.D. Cal. Oct.
   2, 2015)................................................................................................... 18

*Houston v. Medtronic, Inc.*,
   957 F. Supp. 2d 1166 (C.D. Cal. 2013)......................................... 18, 19

*Hufft v. Horowitz*,
   5 Cal. Rptr. 2d 377 (Cal. Ct. App. 1992) ............................................ 13

*Johnson v. American Standard, Inc.*,
   179 P.3d 905 (Cal. 2008)....................................................................... 12

*Johnston v. Irontown Hous. Co.*,
   No. 13-CV-0523 W BLM, 2013 WL 3776946 (S.D. Cal. July 17,
   2013) ...................................................................................................... 16

*Kelley v. Rambus, Inc.*,
   384 F. App'x 570 (9th Cir. 2010)......................................................... 17

- iii -

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS - 15cv2279

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Meaunrit v. The Pinnacle Foods Group, LLC.*,
   No. C 09-04555, 2010 WL 1838715 (N.D. Cal. May 5, 2010) ............................7

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) ................................ 16

*Mutual Pharm. Co. v. Bartlett*,
   133 S. Ct. 2466 (2013). ................................................ 8

*Nathan Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) ............................................ 10

*Oakes v. E.I. Du Pont de Nemours & Co.*,
   77 Cal. Rptr. 709 (Cal. Ct. App. 1969) ............................... 11

*Oregon Azaleas, Inc. v. Western Farm Services, Inc.*,
   No. Civ. 00-1348, 2001 WL 34045733 (D. Or. Aug. 20, 2001),
   *aff'd in part, rev'd in non-relevant part*, 65 F. App'x 101 (9th Cir.
   2003) ................................................................. 11

*Payne v. Soft Sheen Prod., Inc.*,
   486 A.2d 712 (D.C. 1985) ............................................... 13

*Plenger v. Alza Corp.*,
   13 Cal. Rptr. 2d 811 (Cal. App. 1992) ................................. 13

*Purvis v. PPG Indus., Inc.*,
   502 So.2d 714 (Ala. 1987) ............................................. 13

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008) ................................................. 7, 8

*Ruiz-Guzman v. Amvac Chemical Corp.*,
   7 P.3d 795 (Wash. 2000), *opinion after certified question answered*
   243 F.3d 549 (9th Cir. 2000). ........................................ 13

*Schudel v. General Electric*,
   120 F.3d 991 (9th Cir. 1997) ........................................... 4

*Settle v. World Sav. Bank, F.S.B.*,
   No. ED CV 11-00800 MMM, 2012 WL 1026103 (C.D. Cal. Jan.
   11, 2012) ........................................................ 16, 17

*Shamsian v. Atlantic Richfield Co.*, 132 Cal. Rptr. 2d 635 (Cal. Ct.
App. 2003) ..................................................................................................... 16

*In re: Silicone Gel Breast Implants Prods. Liab. Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................... 4

*Skaggs v. Clairol Inc.*,
85 Cal. Rptr. 584 (Cal. Ct. App. 1970) ........................................... 11, 12

*Smith v. Hartz Mountain Corp.*,
No. 3:12-cv-00662, 2012 WL 5451726 (N.D. Ohio Nov. 7, 2012) .................... 6

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................. 19

*Uptain v. Huntington Lab, Inc.*,
685 P.2d 218 (Colo. App. 1984) *aff'd,* 723 P.2d 1322 (Colo. 1986) ................. 13

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000) ............................................................................. 4

*Wilgus v. Hartz Mountain Corp.*,
No. 3:12-CV-86, 2013 WL 653707 (N.D. Ind. Feb. 19, 2013) ........................... 6

*Williams v. Beechnut Nutrition Corp.*,
229 Cal. Rptr. 605 (Cal. Ct. App. 1986) ............................................. 18

**Statutes**

Cal. Com. Code § 2313 ................................................................................ 18

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §136 *et
seq.* ........................................................................................................*passim*

**Other Authorities**

40 C.F.R. §156.10(i)(1)(a) ........................................................................... 6

40 C.F.R. §156.60 ........................................................................................ 6

67 Fed. Reg. 60,934, 60,936, at 60,943 (Sept. 27, 2002) (to be codified
at 40 C.F.R. pt. 180) ......................................................................... 9

69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40
C.F.R. pt. 180) ................................................................................... 9

73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180) ........................................................................... 9

78 Fed. Reg. 25396, 25398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180) ............................................................................ 9

*Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015), http://www.ag.senate.gov/templates/watch.cfm?id=74793e67-5056-a055-64af-0e55900753b4 .................................. 3, 9, 15, 19

Curran W.S. & Lingenfelter D.D., Adjuvants for Enhancing Herbicide Performance, http://extension.psu.edu/pests/weeds/control/adjuvants-for-enhancing-herbicide-performance ....................................................... 2

Duke S. & Powles S., Glyphosate: A Once-In-A-Century Herbicide, *Pest. Manag. Sci.* 2008; 64(4):319-25 .............................................. 2,14

Dwight D. Lingenfelter, Introduction to Weeds: What are Weeds and Why Do We Care?, http://extension.psu.edu/pests/ipm/schools-childcare/schools/educators/curriculum/weeds/introweeds ............... 2

EPA, About Pesticide Registration, http://www2.epa.gov/pesticide-registration/about-pesticide-registration ................................................ 6

EPA, Evaluating Pesticides for Carcinogenic Potential, http://www.epa.gov/pesticides/health/cancerfs.htm ............................... 8

EPA, Glyphosate: Reregistration Eligibility Decision (RED) Fact Sheet (September 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf ................................................................................................. 9

Fed. R. Civ. P. 9(b) ................................................................. 16, 17

Fed. R. Civ. P. 12(b)(6) ................................................................. 5

IARC, *Dry Cleaning*, Vol. 63 (1995), http://monographs.iarc.fr/ENG/Monographs/vol63/mono63-5.pdf ....................... 4

IARC, *IARC Monographs on the Evaluation of Carcinogenic Risk to Humans Preamble* (Jan. 2006), http://monographs.iarc.fr/ENG/Preamble/currenta2objective0706.php; .................................................................................................. 4

IARC, *High-temperature Frying*, Vol. 95 (2010), http://monographs.iarc.fr/ENG/Monographs/vol95/mono95-7.pdf/ ................... 4

IARC, *Shiftwork*, Vol. 98 (2010), http://monographs.iarc.fr/ENG/Monographs/vol98/mono98-8.pdf ..................... 4

IARC, *Chinese-style Salted Fish*, Vol. 100E (2012), http://monographs.iarc.fr/ENG/Monographs/vol100E/mono100E-12.pdf ................................................................................................. 4

IARC, *Consumption of Alcoholic Beverages*, Vol. 100E (2012), http://monographs.iarc.fr/ENG/Monographs/vol100E/mono100E-11.pdf ................................................................................................. 4

IARC, *IARC Monographs Evaluate Consumption of Red Meat and Processed Meat* (Oct. 26, 2015), http://www.iarc.fr/en/mediacentre/pr/2015/pdfs/pr240_E.pdf............................. 4

IARC, *IARC Monographs Questions and Answers* (2015), http://www.iarc.fr/en/media-centre/iarcnews/pdf/Monographs-Q&A.pdf ................................................................................................ 4

Letter from EPA Assistant Administrator Stephen L. Johnson to Secretary of State Colin Powell, dated Aug. 19, 2002, http://www.state.gov/j/inl/rls/rpt/aeicc/13237.htm. ................................ 3

Lucht J.M., Public Acceptance of Plant Biotechnology and GM Crops, *Viruses* 2015; 7(8):4254 ................................................................. 15

Oerke E.C., Crop Losses to Pests, *J. Ag. Sci.* 2006; 144:31-43 ................................ 1

Owen D.G., The Puzzle of Comment J, 55 *Hastings L.J.* 1377 (2004).................... 11

Qaim M. & Traxler G., Roundup Ready Soybeans in Argentina: Farm Level and Aggregate Welfare Effects, *Ag. Econ.* 2005; 32(1):73-86 ................. 14

Restatement (Second) of Torts § 402A ................................................... 1, 10, 11, 12

Solomon K., et al., Coca and Poppy Eradication in Colombia, *Rev Environ Contam Toxicol.* 2007; 190:43-125 .................................................. 2

- vii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Solomon K., et al., Human Health and Environmental Risks from the
     Use of Glyphosate Formulations, *J. Toxicol Environ Health A*.
     2009; 72(15-16):914-20.............................................................................................2

Williams GM, et al.  Safety Evaluation and Risk Assessment of the
     Herbicide Roundup and Its Active Ingredient, Glyphosate, for
     Humans, *Regulatory Toxicol. and Pharmacol.* 2000; 31:117-65 .........................2

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS - 15cv2279

1    Plaintiff Emanuel Richard Giglio alleges that exposure to Monsanto

2  Company's ("Monsanto") Roundup® through his turf installation business caused

3  him to develop non-Hodgkin's lymphoma ("NHL").  Roundup®'s active ingredient,

4  glyphosate, is the most widely-used weed killer in the United States.  Since its

5  introduction in 1974, the U.S. Environmental Protection Agency ("EPA")

6  repeatedly has concluded, including as recently as last month, that exposure to

7  Roundup® does not cause cancer.  *See infra* at 3.

8    Each of plaintiff's claims is deficient and must be dismissed.  As an initial

9  matter, plaintiff's warnings-based claims are preempted under the Federal

10 Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §136 *et seq.*

11 Second, because plaintiff's claims rest upon the alleged inherent carcinogenicity of

12 Roundup® products, his non-warnings-based design defect claims are precluded in

13 California by comments j and k to the Restatement (Second) of Torts § 402A.

14 Next, plaintiff's negligent representation claim fails because he has not pled that

15 claim with sufficient particularity.  Finally, plaintiff has failed to allege sufficient

16 facts to support his claim for breach of express warranty.

17   For these reasons, as set forth more fully herein, plaintiff's complaint should

18 be dismissed in its entirety.

19            **FACTUAL BACKGROUND**

20   The ability to feed the world's growing population while the amount of

21 available farmland continues to dwindle is key to preventing a global humanitarian,

22 agricultural, and economic crisis.  Weeds reduce essential crop yield by displacing

23 and contaminating crops, or rendering crops inedible.  Critically, the use of

24 herbicides can prevent over 70% of potential crop yield losses due to weeds.[1]

25

26 [1] Oerke E.C., Crop Losses to Pests, *J. Ag. Sci.* 2006; 144:31-43 at 38.  In economic

27 terms, the average estimated annual monetary loss – including losses in field crops,
   damage to farming equipment, and increased crop production costs – caused by

28 weeds would exceed $15 billion in the United States alone in the absence of

- 1 -

Glyphosate is "the most important herbicide" developed in the post-World War II era.[2]  Glyphosate-based herbicides first became commercially available in 1974 when, after four years of testing by its research scientists, Monsanto introduced Roundup®, a mixture of glyphosate and surfactants (chemical compounds commonly found in products such as soaps that allow glyphosate to attach to and travel through the surface of the weed to growing areas).[3]  Farmers apply Roundup® before crops are planted or, where glyphosate resistant seed is used, during the growing process.

Glyphosate works by inhibiting a growth-stimulating enzyme that is specific to plants.  Glyphosate is non-selective, meaning that it is intended to and will eradicate any exposed plant.  However, as documented in numerous scientific analyses, glyphosate is not toxic to humans or animals.[4]  EPA, which has broad

---

herbicides.  *See* Dwight D. Lingenfelter, Introduction to Weeds: What are Weeds and Why Do We Care?, http://extension.psu.edu/pests/ipm/schools-childcare/schools/educators/curriculum/weeds/introweeds ("In 1991, the estimated average annual monetary loss caused by weeds with current control strategies in the 46 crops grown in the United States was $4.1 billion.  If herbicides were not used, this loss was estimated to be $19.6 billion.  Losses in field crops accounted for 82% of this total (Bridges; WSSA, 1992).").

[2] Duke S.O. & Powles S.B., Glyphosate: A Once-In-A-Century Herbicide, *Pest. Manag. Sci.* 2008; 64(4):319-25 at 319.

[3] *See* Curran W.S. & Lingenfelter D.D., Adjuvants for Enhancing Herbicide Performance, http://extension.psu.edu/pests/weeds/control/adjuvants-for-enhancing-herbicide-performance.

[4] *See* Solomon K., et al., Human Health and Environmental Risks from the Use of Glyphosate Formulations, *J. Toxicol Environ Health A.* 2009; 72(15-16):914-20 at 919;  Solomon K., et al., Coca and Poppy Eradication in Colombia, *Rev Environ Contam Toxicol.* 2007; 190:43-125 at 106; Williams GM, et al. Safety Evaluation and Risk Assessment of the Herbicide Roundup and Its Active Ingredient, Glyphosate, for Humans, *Regulatory Toxicol. and Pharmacol.* 2000; 31:117-65 at 160 (reviewing over 188 documents either in published scientific literature or submitted to regulatory agencies assessing the safety of glyphosate, and concluding

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

authority to regulate all herbicides under FIFRA, has for decades found glyphosate to be "one of the most safely-used pesticides in the U.S."[5] and repeatedly has concluded that glyphosate exposure does not cause cancer.  As recently as October 21, 2015, Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs, testified before a Senate Committee that EPA's current safety evaluation of glyphosate, announced in April 2015, confirms that scientific literature "does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in EPA's cancer classification for [g]lyphosate."  *See Agriculture Biotechnology: A Look at Federal Regulation and Stakeholder Perspectives: Hearing Before the S. Comm. on Agr., Nutrition, & Forestry*, 114th Cong. (2015) (statement of Dr. William Jordan, Deputy Director of EPA's Office of Pesticide Programs), http://www.ag.senate.gov/templates/watch.cfm?id= 74793e67-5056-a055-64af-0e55900753b4, at time stamp 55:05 – 56:20 (2015) ("EPA 2015 Desk Statement").  The one federal court to consider allegations regarding the carcinogenicity of glyphosate in a personal injury suit rejected those allegations as lacking reliable scientific support.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24-25 (D.D.C. 2013) (excluding as unreliable expert's causation opinion that glyphosate-based herbicides have carcinogenic effects).

Plaintiff ignores this record of safety and instead relies on the International Agency for Research on Cancer's ("IARC") recent "cancer hazard" listing of glyphosate as a "probable carcinogen."  IARC is not a regulatory agency, and none of its determinations are binding on any country.  IARC does not take into account levels of exposure, methods of exposure, or other factors central to a determination

---

that glyphosate "is considered to be practically nontoxic by all these routes of exposure.").

[5] Letter from EPA Assistant Administrator Stephen L. Johnson to Secretary of State Colin Powell, dated Aug. 19, 2002, http://www.state.gov/j/inl/rls/rpt/aeicc/13237.htm.

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

of whether a substance is a carcinogen.[6]  Thus, IARC "may identify cancer hazards even when risks are very low with known patterns of use or exposure."  *See IARC Monographs Questions and Answers*, at 3 (2015), http://www.iarc.fr/en/media-centre/iarcnews/pdf/Monographs-Q&A.pdf.  Based on this same methodology, IARC has classified a wide variety of commonly-used substances and exposures as "probable" or "known" carcinogens, including bacon, hot dogs, and red meat[7]; alcoholic beverages[8]; salted fish[9]; shiftwork[10]; frying food[11]; and dry cleaning[12].

Plaintiff alleges that his diagnosis in 2014 with NHL is the result of his exposure to Roundup® through his work as the owner and operator of a turf

---

[6] *See IARC, IARC Monographs on the Evaluation of Carcinogenic Risk to Humans Preamble*, at 2 (Jan. 2006), http://monographs.iarc.fr/ENG/Preamble/currenta2objective0706.php; *see also Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 997 (9th Cir. 1997) (excluding expert testimony where plaintiff's "exposure was neither long enough nor intense enough to fall within the ranges described in the studies [the expert] relied upon"), *abrogated in non-relevant part by Weisgram v. Marley Co.*, 528 U.S. 440 (2000); *In re: Silicone Gel Breast Implants Prods. Liab. Litig.,* 318 F. Supp. 2d 879, 920 (C.D. Cal. 2004) (excluding expert opinion when plaintiff lacked evidence of carcinogenicity at plaintiff's levels of exposure to the substance).

[7] IARC, *IARC Monographs Evaluate Consumption of Red Meat and Processed Meat* (Oct. 26, 2015), http://www.iarc.fr/en/mediacentre/pr/2015/pdfs/pr240_E.pdf.

[8] IARC, *Consumption of Alcoholic Beverages*, Vol. 100E (2012), http://monographs.iarc.fr/ENG/Monographs/vol100E/mono100E-11.pdf.

[9] IARC, *Chinese-style Salted Fish*, Vol. 100E (2012), http://monographs.iarc.fr/ENG/Monographs/vol100E/mono100E-12.pdf.

[10] IARC, *Shiftwork*, Vol. 98 (2010), http://monographs.iarc.fr/ENG/Monographs/vol98/mono98-8.pdf.

[11] IARC, *High-temperature Frying*, Vol. 95 (2010), http://monographs.iarc.fr/ENG/Monographs/vol95/mono95-7.pdf/

[12] IARC, *Dry Cleaning*, Vol. 63 (1995), http://monographs.iarc.fr/ENG/Monographs/vol63/mono63-5.pdf.

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1   installation business.  Compl. ¶¶ 112, 114.   He asserts a variety of claims, all of

2   which revolve around Monsanto's alleged failure to warn of the risk of cancer.  *See*

3   Compl. ¶¶ 102-109.

4                          **LEGAL STANDARD**

5           To survive a motion to dismiss under Rule 12(b)(6), a complaint must

6   contain sufficient factual matter to "state a claim to relief that is plausible on its

7   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court should first

8   identify and disregard any conclusory allegations because they "are not entitled to

9   the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Next, the

10  court should examine any well-pleaded factual allegations to determine whether

11  they "plausibly suggest an entitlement to relief."  *Id*. at 681; *see also Twombly*, 550

12  U.S. at 555-56.

13          The plausibility analysis is far less deferential than the "no-set-of-facts"

14  standard previously employed by the courts.  *See Twombly*, 550 U.S. at 562-63.

15  Instead, the analysis is "a context-specific task that requires the reviewing court to

16  draw upon its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

17  Consequently, a pleading that offers simple "labels and conclusions" or "a

18  formulaic recitation of the elements of a cause of action will not do."  *Twombly*,

19  550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

20                          **ARGUMENT**

21  **I.    PLAINTIFF'S FAILURE TO WARN CLAIMS ARE PREEMPTED**

22  **      UNDER FIFRA.**

23          Plaintiff's claims for failure to warn, whether brought under strict liability,

24  negligence, negligent misrepresentation, or breach of warranty theories, are

25  preempted by FIFRA – the pervasive federal regulatory scheme implemented by

26  EPA – and by EPA's repeated determination that glyphosate does not cause cancer.

27  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 453 (2005) ("[A] failure-to-

28  warn claim alleging that a . . . pesticide's label should have stated 'DANGER'

- 5 -
MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1  instead of . . . 'CAUTION' would be pre-empted because it is inconsistent with

2  [EPA regulations], which specifically assigns these warnings to particular classes of

3  pesticides based on their toxicity.").[13]

4      Under FIFRA, a manufacturer seeking to register an herbicide must submit a

5  proposed label to EPA as well as certain supporting data.  *Bates*, 544 U.S. at 438

6  (citing 7 U.S.C. §§ 136(c)(1)(C), (F)).  Registration of an herbicide constitutes

7  "prima facie evidence that the [herbicide], its labeling, and packaging comply with

8  FIFRA's registration provisions."  7 U.S.C. § 136(a)(f)(2).  "In evaluating a

9  [herbicide] registration application, [EPA] assess[es] a wide variety of potential

10  human health and environmental effects associated with use of the product …

11  [including] potential human risk[] … [of] cancer."[14]  EPA "evaluate[s] and

12  approve[s] the language that appears on each [herbicide] label to ensure the

13  directions for use and safety measures are appropriate to any potential risk."  *Id.*;

14  *see also* 40 C.F.R. §156.10(i)(1)(a) ("When followed, directions [in the label] must

15  be adequate to protect the public from fraud and from personal injury and to

16  prevent unreasonable adverse effects on the environment."); 40 C.F.R. §156.60

17  ("Each product label is required to bear hazard and precautionary statements for

18  humans and domestic animals (as appropriate) as prescribed in this subpart.").

19      Notably, unlike with claims of efficacy such as those that were at issue in

20  *Bates*, EPA may not waive an Applicant's data requirements pertaining to the

---

[13] *See also Wilgus v. Hartz Mountain Corp.*, No. 3:12-CV-86, 2013 WL 653707, at *6-7 (N.D. Ind. Feb. 19, 2013) (citing *Bates* and holding that where plaintiffs' complaint directly challenged the labeling of the product and alleged that the defendants failed to adequately warn of potential dangers associated with it, plaintiffs' claims were preempted by FIFRA);  *Smith v. Hartz Mountain Corp.*, No. 3:12-cv-00662, 2012 WL 5451726, *2-3 (N.D. Ohio. Nov. 7, 2012) (same).

[14] *See* EPA, *About Pesticide Registration*, http://www2.epa.gov/pesticide-registration/about-pesticide-registration.

- 6 -

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1    human safety of a herbicide.[15]  As *Bates* explains, EPA's decision to stop

2    evaluating pesticides for efficacy was specifically based upon its need to devote its

3    resources to assessing potential environmental and health risks.  *See Bates*, 544

4    U.S. at 440.  EPA cannot register a herbicide or approve its labeling unless EPA

5    concludes that the herbicide "will perform its intended function without

6    unreasonable adverse effects on the environment," *i.e.,* unreasonable risk to man or

7    the environment.  7 U.S.C. § 136a(5)(C)(D); 7 U.S.C. § 136(bb) (defining

8    "unreasonable adverse effects on the environment").

9        In order to ensure the exclusivity of EPA's comprehensive regulatory scheme

10   over product labeling, section 136v(b) of FIFRA contains an express preemption

11   clause, which limits the role of states in regulating warnings for pesticides and

12   herbicides.  Section 136v(b) provides that states "shall not impose or continue in

13   effect any requirements for labeling or packaging in addition to or different from

14   those required under this subchapter."  The Supreme Court explained that the term

15   "requirements" as used in section 136v(b) reaches beyond positive enactments,

16   such as statutes and regulations, to embrace common-law duties.  *Bates*, 544 U.S. at

17   443; *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (quoting

18   *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522 (1992) ("[C]ommon-law

19   liability is 'premised on the existence of a legal duty,' and a tort judgment therefore

20   establishes that the defendant has violated a state-law obligation.")).  Thus, section

---

22   [15] S*ee* 7 U.S.C. § 136a(5) ("the Administrator may waive data requirements
23   pertaining to efficacy"); *cf. Bates*, 544 U.S. at 440 (basing decision not to preempt
24   claims based upon alleged inefficacy of herbicide on fact that EPA had "stopped
     evaluating pesticide efficacy for routine label approvals almost two decades ago");
25   *see also Meaunrit v. The Pinnacle Foods Grp., LLC*, No. C 09-04555, 2010 WL
26   1838715, *10 (N.D. Cal. May 5, 2010) (noting that *Bates* ruling was based on
     EPA's lack of review of efficacy claims and preempting claims that challenged
27   federal safety determinations under express preemption clauses in Federal Meat
     Inspection Act and Poultry Products Inspection Act identical to preemption clause
28   in FIFRA).

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

136v(b) preempts any statutory or common-law rule that would impose a warning requirement that diverges from EPA's labeling decisions under FIFRA.[16]

Here, plaintiff alleges that because Monsanto and other unnamed defendants failed to "accompany their product with proper and/or accurate warnings regarding all possible adverse side effects," including "the development of NHL," he suffered injuries.  Compl. ¶ 127(b), (e); *see also* ¶ 160 ("The defective condition of Roundup was due in part to the fact that it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, . . . developing non-Hodgkin's lymphoma . . ."); ¶ 167 ("Defendants failed to warn of the nature and scope of the side effects associated with Roundup, namely its carcinogenic properties and its propensity to cause or serve as a substantial contributing factor in the development of NHL.").

Plaintiff's allegations are directly contradicted not only by EPA's prior express approval of the product and product label but also by EPA's consistent findings that glyphosate is *not* carcinogenic to humans.  In 1986, EPA established a six-category alphanumeric classification system (A, B1, B2, C, D, and E) for characterizing the carcinogenic potential of chemical substances.  *See Evaluating Pesticides for Carcinogenic Potential*, http://www.epa.gov/pesticides/health/cancerfs.htm.  At one end of the spectrum is Group A, the designation given to substances that are known human carcinogens.  *Id.*  At the other end is Group E, substances where EPA has concluded that there is scientific evidence that the substance is *not* a human carcinogen.  *Id.*  EPA's repeated findings affirming the

---

[16] The U.S. Supreme Court has twice confirmed this interpretation of section 136v(b).  First, in *Riegel*, the Court explained that FIFRA's "provision pre-empting state 'requirements' pre-empted common law duties."  552 U.S. at 324 (citing *Bates*).  Then, in *Mutual Pharmaceutical Co. v. Bartlett*, the Court reiterated that under *Bates*, a state common-law claim imposes a "pre-emptable requirement." 133 S. Ct. 2466, 2479-80 (2013).

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

safety of glyphosate, based on decades of review of extensive scientific data, include identifying glyphosate as a Group E substance.  EPA, Glyphosate: Reregistration Eligibility Decision (RED) Fact Sheet (September 1993), http://archive.epa.gov/pesticides/reregistration/web/pdf/0178fact.pdf.  Specific findings of safety include:

- "Several chronic toxicity/carcinogenicity studies using rats, mice and beagle dogs resulted in no effects based on the parameters examined, or resulted in findings that glyphosate was not carcinogenic in the study.  In June 1991, EPA classified glyphosate as a Group E carcinogen—one that shows evidence of non-carcinogenicity for humans—based on the lack of convincing evidence of carcinogenicity in adequate studies." *Id.*

- "No evidence of carcinogenicity."  Glyphosate; Pesticide Tolerances, 67 Fed. Reg. 60,934, 60,936, at 60,943 (Sept. 27, 2002) (to be codified at 40 C.F.R. pt. 180).

- "Glyphosate has no carcinogenic potential."  Glyphosate; Pesticide Tolerance, 69 Fed. Reg. 65,081, 65,086 (Nov. 10, 2004) (to be codified at 40 C.F.R. pt. 180).

- "There is [an] extensive database available on glyphosate, which indicate[s] that glyphosate is not mutagenic, not a carcinogen, and not a developmental or reproductive toxicant."  Glyphosate; Pesticide Tolerance, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008) (to be codified at 40 C.F.R. pt. 180).

- "EPA has concluded that glyphosate does not pose a cancer risk to humans." 78 Fed. Reg. 25396, 25398 (May 1, 2013) (to be codified at 40 C.F.R. pt. 180).

- "In 2014, EPA reviewed over 55 epidemiological studies conducted on the possible cancer and non-cancer effects of [g]lyphosate.  Our review concluded that this body of research does not provide evidence to show that [g]lyphosate causes cancer and does not warrant any change in the EPA's cancer classification for [g]lyphosate."  EPA 2015 Desk Statement.

Plaintiff's failure to warn claims seek to impose "requirements for labeling or packaging in addition to or different from" these consistent findings of EPA. Accordingly, these claims are preempted by FIFRA and must be dismissed.[17]

## II.   PLAINTIFF'S NON-WARNINGS DESIGN DEFECT CLAIMS ARE BARRED BY RESTATEMENT (SECOND) OF TORTS § 402A.

Plaintiff's design defect claims focus on glyphosate's and/or Roundup®'s alleged "carcinogenic properties."  *See* Compl. ¶¶  32, 44, 81, 124(d), 160, 167, 168.  Plaintiff does not allege that there is an alternative design that would avoid this claimed carcinogenic effect.  Rather, he alleges that glyphosate and Roundup® are inherently and unavoidably dangerous.  *See, e.g.,* Compl. at ¶ 83 ("[N]umerous human and animal studies have evidenced the carcinogenicity of glyphosate and/or Roundup.").  As such, plaintiff's design defect claims are governed by the "closely related" comments j and k to the Restatement (Second) of Torts §402A, and plaintiff is limited to claims that the warnings accompanying the product are deficient.  *See Brown v. Superior Court (Abbott Labs.)*, 227 Cal. Rptr. 768, 772-73 (Cal. Ct. App. 1986), *review granted and opinion superseded*, 723 P.2d 1248 (Cal. 1986), *aff'd sub nom. Brown v. Superior Court*, 751 P.2d 470 (Cal. 1988).[18]  Thus, plaintiff's non-warnings claims should be dismissed.[19]

---

[17] To the extent that plaintiff alleges that these consistent EPA findings of safety are based upon fraud, *see*, *e.g.*, Compl. ¶¶ 106-108, 124(f), 124(p), 185, 201, 203, plaintiff's claims also are impliedly preempted as impermissible fraud-on-the-agency claims.  *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204-06 (9th Cir. 2002).

[18] *See also Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965) (summarizing comments j and k as stating the rule that "a product, although faultlessly made, may nevertheless be deemed 'defective' . . . if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warnings is given").

[19] Section 402A is stated as an adjunct of strict liability, and California courts have found that comments j and k also reflect "well settled rules already a part of the law

- 10 -

As adopted in California, comments j and k address the class of products that carry unavoidable dangers that cannot be designed away without destroying their utility.  Owen D.G., The Puzzle of Comment J, 55 *Hastings L.J.* 1377, 1383 (2004). Such products, "accompanied by proper warnings, are not in a 'defective condition unreasonably dangerous' with respect to the unavoidable dangers inherent in products of this type."  *Id.*  Comments j and k reflect the policy determination in Section 402A that:

> [B]ecause there is no way (other than providing warnings) that manufacturers of such products can minimize the inherent dangers of such products without also destroying their utility, there is no good reason in corrective justice or economics to force manufacturers to insure consumers against risks of harm they have chosen to accept by using products with inherent risks they fully understand.

*The Puzzle of Comment J*, 55 Hastings L. J. at 1383.

California courts have specifically applied comment j in cases involving herbicides.  *See Oakes v. E.I. Du Pont de Nemours & Co.*, 77 Cal. Rptr. 709, 712-13 (Cal. Ct. App. 1969) (explaining that manufacturer of "weed-killing products" was required to warn only of "special danger[s]" they have knowledge of or "'by the application of reasonable, developed human skill and foresight'" should have knowledge of).[20]  Pursuant to comment j, "a product bearing . . . a warning, which

---

of negligence." *Skaggs v. Clairol Inc.*, 85 Cal. Rptr. 584, 587 (Cal. Ct. App. 1970) (discussing comment j); *see also Carlin v. Superior Court*, 920 P.2d 1347, 1357-58 (Cal. 1996) (explaining that comment k is based on negligence principles).

[20] Other courts have done likewise.  *See Ackerman v. Am. Cyanamid Co.*, 586 N.W.2d 208, 220-221 (Iowa 1998) (applying comment j in herbicide case and holding that "[u]nder the applicable products liability law, it is clear that if American Cyanamid had placed directions or warnings on its label that, if followed, would have made the product safe for use, the product would not be unreasonably dangerous and liability would be avoided."); *Oregon Azaleas, Inc. v. W. Farm Serv., Inc.*, No. Civ. 00-1348, 2001 WL 34045733, at *4 (D. Or. Aug. 20, 2001), *aff'd in part, rev'd in non-relevant part*, 65 F. App'x 101 (9th Cir. 2003) (applying

- 11 -

is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* at 712 (quoting comment j); *see also Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 910-11 (Cal. 2008) (applying comment j).  Where "there [is] no evidence . . . that defendant's product was defectively 'manufactured,' in the literal sense of the word, defendant [can] be found liable under the Restatement rule set forth in comment j to section 402A only if it *negligently* failed to label its product in such a manner as to warn consumers of the dangerous ingredient contained therein." *Skaggs*, 85 Cal. Rptr. at 588 (emphasis in original).[21]

In *Brown v. Superior Court*, the California Supreme Court applied comment k and held that manufacturers of prescription drugs cannot be held strictly liable for design defect based upon the theory that the drug was defectively designed.  751 P.2d 470, 479-80 (Cal. 1988).  Rather, a drug manufacturer may be held liable only if "it failed to warn of a defect of which it either knew or should have known."  *Id.* at 476; *see id.* at 476-77 (adopting comment k as *per se* rule in cases involving prescription drugs); *see also id.* at 481 (explaining that consistent with comment j, defendants could not be held liable for failing to warn of "alleged defects in the drug that were neither known by defendants nor scientifically knowable at the time the drug was distributed.").  The court reasoned that "[p]ublic policy favors the development and marketing of beneficial new products, even though some risks, perhaps serious ones, might accompany their introduction . . . ."  Thus, "the imposition of a harsher test for liability would not further the public interest . . . ." *Id.* at 479-80.

---

comment j in rejecting design defect claim involving pesticide).

[21] "Other courts have also held that where adequate warnings are given, a product is neither defective nor unreasonably dangerous."  *Gauthier v. AMF, Inc.*, 788 F.2d 634, 635-36 (9th Cir. 1986) (Montana law and citing other cases); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1323 (9th Cir. 1993) (Oregon law).

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1
2
3
4
5
6
7

"*Brown's* logic and common sense are not limited to drugs." *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 556 (Cal. 1991). California courts thus have extended comment k protection to other medical products, including inflatable penile prostheses,[22] breast implants,[23] and intrauterine devices.[24] Courts in other jurisdictions have applied comment k to chemicals and other compounds, including asbestos-containing insulation,[25] benzene,[26] cleaning compounds,[27] perchloroethylene,[28] and permanent hair wave products.[29]

8
9
10
11
12
13
14
15

In *Ruiz-Guzman v. Amvac Chemical Corp.*, the Supreme Court of Washington applied comment k to a pesticide. 7 P.3d 795, 803 n.10 (Wash. 2000), *opinion after certified question answered* 243 F.3d 549 (9th Cir. 2000). The court reasoned that "a determination that pesticides can *never* be unavoidably unsafe products within the ambit of comment k would seem to defy common sense." *Id.* at 803. Accordingly, "a product-by-product approach to the application of comment *k* [to pesticides] is warranted." *Id.* The court held that even if "its product cannot be made safer for its intended use, a pesticide manufacturer could demonstrate the

16
17

[22] *Hufft v. Horowitz*, 5 Cal. Rptr. 2d 377, 378, 383-84 (Cal. Ct. App. 1992).

18

[23] *Artiglio v. Superior Court*, 27 Cal. Rptr. 2d 589, 593-94 (Cal. Ct. App. 1994).

19
20

[24] *Plenger v. Alza Corp.*, 13 Cal. Rptr. 2d 811, 818-19 (Cal. Ct. App. 1992).

21

[25] *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1091 (5th Cir. 1973); *Daniels v. Combustion Eng'g, Inc.*, 583 S.W.2d 768, 772 (Tenn. Ct. App. 1978).

22
23

[26] *Authement v. Ingram Barge Co.*, 977 F. Supp. 2d 606, 615 (E.D. La. 2013); *Hall v. Ashland Oil Co.*, 625 F. Supp. 1515, 1518 (D. Conn. 1986).

24
25

[27] *Uptain v. Huntington Lab, Inc.*, 685 P.2d 218, 220 (Colo. App. 1984) *aff'd,* 723 P.2d 1322 (Colo. 1986).

26

[28] *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714, 718 (Ala. 1987).

27

[29] *Payne v. Soft Sheen Prod., Inc.*, 486 A.2d 712, 722 (D.C. 1985).

28

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1  product serves an important enough function (e.g., in the realm of food production)

2  so as to justify its unavoidable risks." *Id*.

3      Particularly as plaintiff here alleges that glyphosate is unavoidably unsafe,

4  his design defect claims are governed by comments j and k, and Monsanto's only

5  duty is to provide a proper warning. *See also Bates*, 544 U.S. at 450 n.25 ("Given

6  the inherently dangerous nature of pesticides, most safety gains are achieved not

7  through modifying a pesticide's design, but by improving the warnings and

8  instructions contained on its label."). Notwithstanding its alleged inherent risks,

9  glyphosate use is justified by its significant value to society. According to U.S.

10 Department of Agriculture scientist Stephen O. Duke, "[G]lyphosate more closely

11 approximates to a perfect herbicide than any other[.]" *See Glyphosate: A Once-In-*

12 *A-Century Herbicide* at 319.

13      As detailed above, glyphosate is unique in its high specificity towards an

14 enzyme that is essential to plant growth but that is not present in animals or

15 humans. *See id*. No other chemical classes or analogs are capable of targeting the

16 enzyme this way. *Id*. Glyphosate's unique mode of action also is active on a wide

17 range of plant species. *Id*. The "spectacular" adoption of glyphosate-resistant

18 ("GR") crops is due to the fact that "the [specific] combination of glyphosate and a

19 GR crop . . . provides better, simpler, cheaper and more flexible weed management

20 than the conventional alternatives." *Id*. at 322. Plaintiff acknowledges that

21 "Monsanto's glyphosate products are registered in more than 130 countries and are

22 approved for weed control in more than 100 crops. No other herbicide active

23 ingredient compares in terms of approved uses." Compl. ¶ 31.

24      The aggregate welfare effects of glyphosate and GR crops are also

25 considerable. For example, in 2001 alone, GR soybeans created more than $1.2

26 billion of economic surplus at the global level, with the largest share, 53%, going to

27 consumers. *See* Qaim M. & Traxler G., Roundup Ready Soybeans in Argentina:

28 Farm Level and Aggregate Welfare Effects, *Ag. Econ.* 2005, 32(1):73-86; *see also*

- 14 -
MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

1    Lucht J.M., Public Acceptance of Plant Biotechnology and GM Crops, *Viruses*

2    2015; 7(8):4254, at 4255 (By using crops engineered to be resistant to glyphosate

3    and other herbicides, "[f]armer's profits increased by 68% on average . . . . Crop

4    yields rose by 22%, the expense for pesticides declined by 39%.").

5       Although plaintiff may allege that glyphosate might have been "made safer if

6    it was withheld from the market until scientific skill and knowledge advanced to the

7    point at which additional side effects would be revealed," *Brown*, 751 P.2d at 479,

8    such a delay *added* to the delay required to obtain approval for release of the

9    product and product label from EPA, "would not serve the public welfare."  *Id.*

10   Moreover, if Monsanto or other manufacturers of herbicide products were subject

11   to strict liability, they might be "reluctant to undertake research programs" to

12   develop beneficial new products, and "the additional expense of insuring against

13   such liability . . . and of research programs to reveal possible dangers not detectable

14   by available scientific methods" could place the cost of vital herbicide products

15   "beyond the reach of those who need it most" like poor, rural, and developing

16   populations.  *See id*; *see also Agriculture Biotechnology*, at time stamp 2:39:28 –

17   2:40:01 (Statement of Dr. Robert Kleinman, Physician in Chief at Massachusetts

18   General Hospital for Children) (2015) ("[Food insecurity] is often driven by

19   economic limitations and often afflicting the most vulnerable children . . . and the

20   elderly . . . .  Enhanced, sustainable food production is essential [to addressing this

21   problem] in both the developed and undeveloped world.").

22      Given "the public['s] interest in the development, availability, and reasonable

23   price" of glyphosate, plaintiff's claims are governed by comments j and k, and

24   Monsanto may only be held liable based upon an alleged failure to warn.  *See*

25   *Brown*, 751 P.2d at 477.  Plaintiff's non-warnings strict liability and negligent

26   design defect claims should be dismissed.

27

28

1
2

### III.   PLAINTIFF FAILS TO ADEQUATELY PLEAD NEGLIGENT MISREPRESENTATION.

3       Under California law, a plaintiff alleging negligent misrepresentation is

4   required to plead (1) the misrepresentation of a past or existing material fact, (2)

5   without reasonable ground for believing it to be true, (3) with intent to induce

6   another's reliance on the fact misrepresented, (4) justifiable reliance on the

7   misrepresentation, and (5) resulting damage. *Apollo Capital Fund, LLC v. Roth*

8   *Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 213 (Cal. Ct. App. 2007) (citing

9   *Shamsian v. Atlantic Richfield Co.*, 132 Cal. Rptr. 2d 635, 647 (Cal. Ct. App.

10  2003)).  Plaintiff fails to do so, and his negligent misrepresentation claims should

11  be dismissed.

12      It is well-settled in the Ninth Circuit that misrepresentation claims are a

13  species of fraud that must meet Federal Rule of Civil Procedure 9(b)'s particularity

14  requirement.[30] *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F.

15  Supp. 2d 1214, 1219 (E.D. Cal. 2005); *see also Glen Holly Entm't, Inc. v.*

16  *Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("Claims for fraud

17  and negligent misrepresentation must meet the heightened pleading requirements of

18  Rule 9(b).").  A plaintiff must specifically identify the alleged misrepresentations

19  and plead evidentiary facts, including the dates, times, places and person associated

20  with each misrepresentation. *Johnston v. Irontown Hous. Co.*, No. 13-CV-0523 W

21  (BLM), 2013 WL 3776946, at *5 (S.D. Cal. July 17, 2013).  A failure to plead

22  negligent misrepresentation with particularity as required by Rule 9(b) will result in

23  the dismissal of the claim. *See, e.g.*, *Settle v. World Sav. Bank, F.S.B.*, No. ED CV

24  11-00800 MMM, 2012 WL 1026103, at *6-7 (C.D. Cal. Jan. 11, 2012) (dismissing

25  negligent misrepresentation claim where plaintiff alleged "a series of dates on

26  which they purportedly communicated with defendant," but no specific dates or

27

28  [30] *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

facts regarding the nature of the communications, and therefore failed to satisfy Rule 9(b)'s "exacting pleading standard."); *see also Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (affirming dismissal of plaintiff's negligent misrepresentation claim for failing to "meet the heightened pleading standards" of Rule 9(b)).

Here, plaintiff's vague and conclusory allegations plainly lack the requisite particularity.  Plaintiff offers four broad statements Monsanto purportedly "represented" to "Plaintiff, the EPA, and the public in general:"

> a) that glyphosate had been tested and found to be safe and effective for ordinary use as a broad spectrum herbicide;
>
> b) that glyphosate was safer than regular household items and contained no carcinogenic and/or genotoxic properties;
>
> c) that there is no evidence that glyphosate was carcinogenic and/or genotoxic; and
>
> d) that regulatory authorities and independent experts were, at all relevant times, in agreement that there is and was no evidence that glyphosate is carcinogenic and/or genotoxic.

*See* Compl. ¶ 210(a)-(d).  However, plaintiff fails to allege *when* or *where* these alleged misrepresentations occurred.  Further missing from the complaint are alleged facts showing that there was no reasonable ground for Monsanto to believe its statements regarding the safety of glyphosate to be true, that Monsanto intended to induce reliance on the facts misrepresented, or that there was, in fact, justifiable reliance by the plaintiff.  Because plaintiff has not adequately pled the "who, what, when, where, and how" of the alleged misrepresentations, he has failed to satisfy Rule 9(b)'s pleading standard and his negligent misrepresentation claim must be dismissed.  *See Settle*, 2012 WL 1026103 at *7.

1
2

## IV.  PLAINTIFF FAILS TO ADEQUATELY PLEAD BREACH OF EXPRESS WARRANTY.

3          Under California law, a plaintiff alleging a breach of express warranty must

4    allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a

5    breach of that warranty which proximately causes plaintiff's injury.  *Cruz v. Sears*,

6    No. 12-CV-00623-H (BGS), 2012 WL 2923323, at *4 (S.D. Cal. Jan. 18, 2012)

7    (citing *Williams v. Beechnut Nutrition Corp.,* 229 Cal. Rptr. 605, 608 (Cal. Ct. App.

8    1986)).  The alleged warranty must be "an affirmation of fact or promise" that

9    "formed the basis of the bargain."  *See* Cal. Com. Code § 2313.  A failure to plead

10   the requisite elements for breach of express warranty will result in dismissal of the

11   claim.  *See, e.g.*, *Hammarlund v. C.R. Bard, Inc.*, No. 2:15-cv-05506-SVW-JEM,

12   2015 WL 5826780, at *5 (C.D. Cal. Oct. 2, 2015) (dismissing plaintiff's express

13   warranty claim where plaintiff failed to allege facts demonstrating that

14   "[d]efendants' affirmations formed the basis of the bargain, . . . and that [plaintiff]

15   relied on them.");  *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1181 (C.D.

16   Cal. 2013) (dismissing plaintiff's express warranty claim, in part, because plaintiff

17   "alleged no facts demonstrating that [d]efendants made any affirmations

18   specifically to [p]laintiff . . . so as to form the basis of the bargain.").

19          Here, plaintiff fails to sufficiently allege the elements for breach of express

20   warranty under California law.  Plaintiff offers two statements in support of his

21   allegation that "Defendant breached various express warranties with respect to

22   Roundup":

23            a) that Monsanto's website states that "[r]egulatory authorities
                 and independent experts around the world have reviewed
24               numerous long-term/carcinogenicity and genotoxicity studies
                 and agree that there is no evidence that glyphosate, the active
25               ingredient in Roundup brand herbicides and other
                 glyphosate-based herbicides, causes cancer, even at very high
26               doses, and that it is not genotoxic"
27

28

- 18 -

MONSANTO'S MEMORANDUM ISO MOTION TO DISMISS – 15cv2279

b) that Monsanto expressly warrant[]ed that glyphosate is "safer than table salt" and "practically nontoxic."

*See* Compl. ¶ 186(a)-(b).

Plaintiff fails to allege facts demonstrating how these statements specifically reached him or affected him, such that they formed the "basis of the bargain." *See Houston*, 957 F. Supp. 2d at 1181. Though plaintiff alleges that the first statement appeared on Monsanto's website, he does not indicate that he, personally, read the statements and purchased Roundup® as a result. Moreover, the statement that regulatory agencies and independent experts have concluded that there is no evidence that glyphosate causes cancer is undeniably true, as plaintiff himself acknowledges in his complaint. *See* Compl. ¶¶ 47*, 100; see also* EPA 2015 Desk Statement. A true statement cannot form the basis of a claim for breach of express warranty. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014) (dismissing breach of warranty claim based upon true statement in marketing brochure).

Plaintiff does not identify the source of the alleged second warranty, citing instead to an unrelated news report from France. Compl. ¶ 186(b), n.14. Elsewhere in his complaint, plaintiff alleges that the statements appeared in advertisements in New York in 1996. *See* Compl. ¶ 41. But plaintiff again fails to allege how these statements reached him nearly two decades later in California or affected his decision to purchase and use Roundup®.

Plaintiff has not alleged sufficient facts to support his breach of express warranty claim and, therefore, this claim must be dismissed.

- 19 -

1

## **CONCLUSION**

2

3       For the foregoing reasons, this Court should grant this motion and dismiss

4   plaintiff's complaint in its entirety.

5   DATED:  November 4, 2015          Respectfully submitted,

6
                                      PARKER, MILLIKEN, CLARK, O'HARA
7                                     & SAMUELIAN. P.C.

8                                     /s/ Richard A. Clark

9                                     Richard A. Clark
                                      State Bar No. 39558
10                                    (rclark@pmcos.com)
                                      Steven R. Platt
11                                    State Bar No. 245510
                                      (splatt@pmcos.com)
12                                    PARKER, MILLIKEN, CLARK, O'HARA
                                      & SAMUELIAN. P.C.
13                                    555 S. Flower Street, 30th Floor
                                      Los Angeles, CA 90071
14                                    Telephone: (213) 683-6500
                                      Facsimile:  (213) 683-6669
15

16                                    Joe G. Hollingsworth
                                      (jhollingsworth@hollingsworthllp.com)
17                                    Katharine R. Latimer
                                      (klatimer@hollingsworthllp.com)
18                                    Eric G. Lasker
                                      (elasker@hollingsworthllp.com)
19                                    HOLLINGSWORTH LLP
                                      1350 I Street, N.W.
20                                    Washington, DC  20005
                                      Telephone:  (202) 898-5800
21                                    Facsimile:  (202) 682-1639

22
                                      Attorneys for Defendant MONSANTO
23                                    COMPANY

24

25

26

27

28