

**Aimee H. Wagstaff, Esq.**
*Licensed in Colorado & California*
Aimee.wagstaff@andruswagstaff.com
AndrusWagstaff.com

7171 W Alaska Drive
Lakewood, Colorado 80226
Office: (303) 376-6360

November 16, 2015

<u>**VIA U.S. MAIL and E-MAIL**</u>

Richard Alden Clark, Esq.
Steven Platt, Esq.
Parker Milliken
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
rclark@pmcos.com
splatt@pmcos.com

Joe G. Hollingsworth, Esq.
Eric G. Lasker
Katharine R. Latimer
Hollingsworth, LLP
1350 I Street NW
Washington, DC 20005
jhollingsworth@hollingsworthllp.com
klatimer@hollingsworthllp.com
elasker@hollingsworthllp.com

RE*: Document Retention Letter- Giglio v. Monsanto Corp., 15-CV-2279*

Dear Counsel:

This letter acts as a reminder of Monsanto's continuing obligation to protect and preserve all relevant documents, tangible evidence, data, information, and other relevant evidence with respect to Mr. Giglio's October 10, 2015 Complaint against Monsanto Corp. This request specifically includes any and all electronically stored information, including e-mails, spreadsheets, word documents, pdfs, databases, and any and all additional information stored electronically. Plaintiff's request extends to agents and employees of Defendant Monsanto Corp. Relevant information includes evidence "reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1).

<u>**Electronically Stored Information**</u>

The laws and rules prohibiting destruction of evidence apply to electronically stored information ("ESI") in the same manner that they apply to other evidence. Due to its format, electronic information is easily deleted, modified or corrupted. While we do not want to disturb business operations, we request the preservation of discoverable ESI on all media including, but not limited to, the following sources and in like manner as discussed below. Not knowing the sophistication of your electronic servers, I have included my ESI preservation request. For purposes of this preservation request, "Monsanto" includes all Monsanto employees and agents, including individuals as well as corporate agents, wholly-owned companies, and subsidiaries as well as retained consultants. Plaintiff requests that Monsanto forward a copy of this preservation letter to all former high level employees and all third party persons or companies for whom Monsanto can reasonably contact that may

have information that fits within a category below, to include all attorneys, lobby groups/firms, or pubic relations/media companies in the United States or elsewhere.

A non-comprehensive category of relevant subject to this request include:

1. All correspondence, memos, reports or other documentation regarding the safety profile of Roundup, glyphosate and other active and inactive ingredients of Roundup, to include all testing (raw data included) and investigations conducted by Monsanto or a third party;

2. All correspondence, memos, reports or other documentation with the FDA regarding Roundup, glyphosate and other active and inactive ingredients of Roundup, and all internal correspondence or other documentation regarding same;

3. All correspondence, memos, reports or other documentation with the EPA regarding Roundup, glyphosate and other active and inactive ingredients of Roundup, and all internal correspondence or other documentation regarding same;

4. All correspondence, memos, reports or other documentation regarding an association between Roundup, glyphosate and other active and inactive ingredients of Roundup, and personal injuries, including but not limited to cancer, kidney disease, reproductive impairment and damage, skin conditions, and respiratory disease.

5. All correspondence, memos, reports or other documentation regarding the toxicity of Roundup, glyphosate and other active and inactive ingredients of Roundup, including but not limited to all testing (raw data included) and investigations conducted by Monsanto or a third party;

6. All correspondence, memos, reports or other documentation between Monsanto and the World Health Organization regarding Roundup, glyphosate and other active and inactive ingredients of Roundup;

7. All correspondence, memos, reports or other documentation between Monsanto and IARC regarding Roundup, glyphosate and other active and inactive ingredients of Roundup;

8. All correspondence, memos, reports or other documentation between Monsanto and the European Food Safety Authority regarding Roundup, glyphosate and other active and inactive ingredients of Roundup;

9. All correspondence, memos, reports or other documentation between Monsanto and the European Members States regarding Roundup, glyphosate and other active and inactive ingredients of Roundup;

10. All correspondence, memos, reports or other documentation with any lobby group or public relations/media firm (or similar company identifying under a different name) regarding Roundup, glyphosate and other active and inactive ingredients of Roundup;

11. All correspondence, memos, reports or other documentation regarding Roundup Labeling, warnings, and changes thereto;

12. All correspondence, memos, reports and other documentation shared between Monsanto and any governmental body about the safety, labeling and/or warnings about Roundup, glyphosate and other active and inactive ingredients of Roundup, including but not limited to New York State, the governments of Sri Lanka, France, Columbia, Argentina, and Canada, and any other United States or foreign government; and

13. All correspondence, memos, reports or other documentation regarding the chemical composition of Roundup, glyphosate and other active and inactive ingredients of Roundup, and all changes made thereto over time since the use of glyphosate as an active ingredient in herbicide formulations.

[1]You may not modify, delete or otherwise alter (i.e., by data compression, disk de-fragmentation, manual purging of deleted files or optimization routines) any electronic data unless a computer forensic expert makes a mirror image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes

---

[1] For definitions of terms used herein, please refer to "The Sedona Conference Glossary For E-Discovery and Digital Information Management" at:
http://www.relevantevidence.com/downloads/TSGlossaryMay05Version.pdf

the file available for litigation. The expert must make a mirror image of active files, restored versions of deleted files, and restored versions of deleted file fragments, hidden files, and directory listings. This includes, but is not limited to, preserving electronic data (stored on online or offline storage devices) that came from the following hardware systems or software applications:

1. *Database Systems*:

    a. Database systems including, but not limited to, active, legacy, and archived databases used for the capturing of data used for adverse event reporting, evaluation of clinical study data, and contacts with prescribers and health care professionals.
    b. Special care should be taken to ensure that discoverable databases are not modified, altered or destroyed.
    c. Relevant table structures, relationships, and modification logs should be preserved from spoliation by inadvertent manipulation during the ordinary course of business and maintenance.
    d. Forensic, bit-by-bit copies of all spindle hard drives and solid state drives, whether internal or external, should be made in order to preserve discoverable metadata, hidden, and deleted files which are likely to be overridden in the ordinary course of business.
    e. Database systems, including hardware and software, that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI or render the ESI unrecoverable unless a computer forensic expert first makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation along with the software to translate the data into useable information.

2. *Email Systems*:

    a. Email systems include, but are not limited to, active, legacy, and archived email systems used by key persons to this litigation.
    b. You have an obligation to preserve all potentially relevant internal and external emails that were sent or received including any attachments.
    c. Email must be preserved in electronic format, regardless of whether hard copies of the information exist.
    d. Special care should be taken to ensure that discoverable emails are not modified, altered or destroyed.
    e. Emails should be preserved from spoliation in the format in which they are stored on the local computer. Mailboxes on the central email system should also be preserved from spoliation and protected against alteration by email users and automated retention policies undertaken in the ordinary course of business.

    f.  Forensic, bit-by-bit copies of all spindle hard drives and solid state drives, whether internal or external, should be made in order to preserve discoverable metadata, hidden, and deleted files which are likely to be overridden in the ordinary course of business on the email system.

    g.  Email systems, including hardware and software, that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI or render the ESI unrecoverable unless a computer forensic expert first makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation along with the software to translate the data into useable information.

3.   *Other Application Server Systems:*

    a.  Plaintiff understands that companies may use proprietary and/or off-the-shelf applications to facilitate the control of internal projects, product lifecycle management, personnel organization, client management, regulatory compliance and other areas. Often applications have been updated from a mainframe/terminal system to a client/server system and the data created by these machines and software become unreadable or inaccessible. Therefore, it is important that application server systems, including hardware and software, that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI or render the ESI unrecoverable unless a computer forensic expert first makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation along with the software to translate the data into useable information.

4.   *File Server Systems*:

    a.  Files servers, including but not limited to, network storage of shared, and personal folders and files for key personnel should be backed up on media marked specifically for litigation use.

    b.  If you use file servers for online storage and/or other direct access storage devices, you must immediately cease modifying or deleting any electronic data unless forensically sound, bit-by-bit copies of all spindle hard drives and solid state drives, whether internal or external, are first made in order to preserve discoverable metadata, hidden, and deleted files which are likely to be overridden in the ordinary course of business.

c. File server systems, including hardware and software, that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI or render the ESI unrecoverable unless a computer forensic expert first makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation along with the software to translate the data into useable information.

5.   *Portable Devices*:

a. Portable devices include, but are not limited to, laptops, tablet PCs, smart phones, personal digital assistants, and digital cameras.
b. Forensic, bit-by-bit copies of all spindle hard drives and solid state drives, whether internal or external, should be made in order to preserve discoverable metadata, hidden, and deleted files which are likely to be overridden in the ordinary course of business.
c. Do not erase or otherwise delete text messages that contain information relevant to this litigation.
d. Portable devices used by key persons that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI unless a computer forensic expert makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation.

6.   *Personal Computers*:

a. Personal computers include, but are not limited to, desktop computers of key persons; desktop computers of personal assistants to key persons, and terminals used by transient, terminated, or other personnel which may reasonably contain discoverable ESI.
b. Forensic, bit-by-bit copies of all spindle hard drives and solid state drives, whether internal or external, should be made in order to preserve discoverable metadata, hidden, and deleted files which are likely to be overridden in the ordinary course of business.
c. Personal computers used by key persons that are scheduled to be replaced or have been replaced should be preserved without recycling, refreshing, or re-zeroing drives in a manner that would destroy discoverable ESI unless a computer forensic expert first makes a bit-by-bit image of the electronic file, follows proper preservation protocols for assuring the accuracy of the file (i.e., chain of custody), and makes the file available for litigation.

7.  *Audio recordings*:

    a.  Audio recordings include, but are not limited to, voicemail systems telephone conversation recording devices, and other voice recording systems.

    b.  You should take reasonable steps to promptly make or collect any transcripts or text files of audio recordings containing potentially relevant information.

8.  *Offline Data Storage*:

    Offline data storage includes, but is not limited to, backup and archival media, floppy diskettes, magnetic, magneto-optical, and/or optical tapes and cartridges, DVDs, CDROMs, and other removable media. You should immediately suspend all activity that might result in destruction or modification of all of the data stored on any offline media. This includes overwriting, recycling or erasing all or part of the media.

Again, it should be understood that the foregoing is not an all inclusive list of categories of evidence that is relevant to the litigation and that Monsanto has a duty to preserve independent of this request, but rather is intended to identify certain areas of discussion which should be undertaken in accordance with the law, regarding your duty to preserve potentially relevant ESI, documents, and tangible evidence, in accordance with applicable case law. Plaintiff will be serving written discovery that will include documents and categories of documents beyond those identified in this preservation request.

**If your document retention policy previously resulted in the destruction of documents or electronically stored information that can still be reasonably recovered, please recover this information immediately.** Failure to comply with this request will result in Plaintiff requesting a spoliation order and/or negative inference.

Please let me know if you have any questions. My direct line is 720-208-9414.

Best,

/s/Aimee H. Wagstaff, Esq.