1  Richard A. Clark
   State Bar No. 39558
2  (rclark@pmcos.com)
   Steven R. Platt
3  State Bar No. 245510
4  (splatt@pmcos.com)
   PARKER, MILLIKEN, CLARK, O'HARA
5  & SAMUELIAN. P.C.
   555 S. Flower Street, 30th Floor
6  Los Angeles, CA 90071
7  Telephone: (213) 683-6500
   Facsimile:  (213) 683-6669
8
   Joe G. Hollingsworth (admitted *pro hac vice*)
9  DC Bar No. 203273
   (jhollingsworth@hollingsworthllp.com)
10 Katharine R. Latimer (admitted *pro hac vice*)
11 DC Bar No. 405137
   (klatimer@hollingsworthllp.com)
12 Eric G. Lasker (admitted *pro hac vice*)
   DC Bar No. 430180
13 (elasker@hollingsworthllp.com)
14 HOLLINGSWORTH LLP
   1350 I Street, N.W.
15 Washington, DC  20005
   Telephone:  (202) 898-5800
16 Facsimile:  (202) 682-1639

17 Attorneys for Defendant
   MONSANTO COMPANY
18

19          UNITED STATES DISTRICT COURT

20          SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 21  EMANUEL RICHARD GIGLIO, | **C.V. NO.: 3:15-cv-2279-BTM-WVG** |
| 22        Plaintiff, | **MONSANTO COMPANY'S MOTION FOR SCHEDULING ORDER REGARDING GENERAL CAUSATION AND MEMORANDUM OF LAW IN SUPPORT** |
| 23     v. | |
| 24  MONSANTO COMPANY, | |
| 25        Defendant. | **SPECIAL BRIEFING SCHEDULE AND PROCEDURE ORDERED; NO SEPARATE NOTICE REQUESTED** |
| 26 | |
| 27 | Magistrate Judge: William V. Gallo |
| 28 | |

MONSANTO'S MOT. AND MEM. FOR SCHEDULING ORDER

Pursuant to the Magistrate Judge's Scheduling Order for Briefing on Motion for Bifurcated Discovery, ECF No. 45, and based on Federal Rules of Civil Procedure 1, 16, and 26 and the Court's inherent authority to manage its docket, defendant Monsanto Company ("Monsanto") hereby moves for the reasons set forth below that the Court adopt a scheduling order that addresses the threshold issue of "general causation" before potentially unnecessary and burdensome discovery on secondary issues.

## INTRODUCTION

While plaintiff's 216-paragraph Complaint, ECF No. 1, spans over four decades of alleged Monsanto misconduct in its marketing and labeling of glyphosate-based herbicides, each of his claims depends on the threshold question of whether Monsanto's herbicide products are capable of causing plaintiff's non-Hodgkin's lymphoma ("NHL").  The U.S. EPA and regulators worldwide repeatedly have concluded that the large body of relevant scientific research does not support a causal link between glyphosate and cancer.  Likewise, the one court to consider allegations regarding the carcinogenicity of glyphosate-containing herbicides in a personal injury suit squarely rejected those allegations as lacking reliable scientific support under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) – but only after years of litigation over issues the Court did not need to consider.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 24-25 (D.D.C. 2013) (excluding as unreliable expert's causation opinion that glyphosate-based herbicides have carcinogenic effects).

Thus, to avoid a potential massive waste of party and Court resources on issues the Court may never reach, and consistent with the recently amended Federal Rules of Civil Procedure and a very recent ruling out of the Northern District of California, Order Granting Motion for Bifurcation, *Hardeman v. Monsanto Co.*, No. 3:16-cv-00525-VC (N.D. Cal. June 16, 2016), ECF No. 66 (Ex. 1) ("*Hardeman* Bifurcation Order"), Monsanto requests that the Court sequence these proceedings

- 1 -
MONSANTO'S MOT. AND MEM. FOR SCHEDULING ORDER – 15cv2279

so general causation can be addressed at the earliest possible stage. Only if plaintiff can meet his threshold *Daubert* burden on general causation would a second phase of discovery be needed on liability and damages issues and specific causation issues involving the alleged exposure and medical history of plaintiff.

**I.     The Federal Rules And Principles Of Sound Judicial Management Favor Ordering Sequenced Discovery To Address General Causation First.**

One of the top takeaways from the December 2015 Federal Rule Amendments is that "'[t]he parties and court should consider sequencing discovery to focus on those issues with the greatest likelihood to resolve the case, and the biggest bang-for the buck at the outset, with [the possibility of] more discovery, later, as the case deserves.'" *Wide Voice, LLC v. Sprint Commc'ns Co.*, No. 2:15-cv-1604, 2016 WL 155031, at *2 (D. Nev. Jan. 12, 2016) (quoting Laurence Pulgram, *The Top 7 Takeaways From the 2015 Federal Rule Amendments*, American Bar Association (2015)).

The federal rules have long required consideration of whether "discovery should be conducted in phases or be limited to or focused on particular issues," Fed. R. Civ. P. 26(f)(3)(B), and encouraged orders that may "expedit[e] disposition of the action" and avoid "wasteful pretrial activities," Fed. R. Civ. P. 16(a); *see also* Fed. R. Civ. P. 16(c)(2) (encouraging "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"). While the importance of sequencing discovery in complex litigation is more important today than ever, this case management strategy has been encouraged for many years. *See, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 599-600 (1998) (trial courts should consider employing targeted, sequenced discovery where it may "facilitate prompt and efficient resolution of the lawsuit"). Toward this aim, the *Manual for Complex Litigation (Fourth)* has advised courts to recognize that "[e]arly and full disclosure of expert evidence can . . . define and narrow issues," § 11.481 (2004), and to

include within the "[i]ssues to be taken up early in the litigation . . . whether the facts and expert evidence support a finding that the products . . . in question have the capacity to cause the type of injuries alleged," *id.* § 22.634. *See also id.* § 11.422 (recommending use of phased, sequenced, or focused discovery where targeted information might provide the foundation for resolution of a dispositive motion).

But in explaining its 2015 FRCP amendments, the Federal Rules Advisory Committee stressed that the "information explosion" attendant to "the advent of e-discovery" and "the potential cost of wide-ranging discovery" required additional amendments to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee note to 2015 amendment. The Committee noted that the traditional approach of employing the federal rules on "a self-regulating basis" without additional discovery management has not worked well where, as here, the potential discovery volume is great. *See id.*

To ensure proper understanding and application of the Federal Rules amendments, "an intensive one-year effort involving the bench, bar, and academy" produced the *Discovery Proportionality Guidelines and Practices*, which is "intended to meet the immediate need of the bench and bar for guidance on [the] amendments [that took] effect in December 2015." 99 Judicature, No. 3, Winter 2015, at 47-60 (Ex. 2). For cases where "the discovery is likely to be voluminous or complex, or there is likely to be significant disagreement about relevance or proportionality, the judge should encourage the parties to consider initially focusing discovery on the information central to the most important subjects, available from the most easily accessible sources of that information." *Id.* Party and court resources should be devoted first to discovery on "important information on issues that must be resolved" while reserving discovery on issues "that may be deferred until other threshold or more significant issues are resolved, or that may not need to

- 3 -
MONSANTO'S MOT. AND MEM. FOR SCHEDULING ORDER – 15cv2279

be resolved at all." *Id.* at 53; *see also id.* at 57 ("[A]n expected summary judgment motion might influence the timing, sequence, or scope of planned discovery.").

The 2015 amendments are also addressed at length in Chief Justice John G. Roberts' Year-End Report on the Federal Judiciary. Justice Roberts likewise advised courts that "early and effective case management" should be used to "focus discovery . . . on what is truly necessary to resolve the case," to address the fact that "civil litigation has become too expensive," and to "address serious new problems associated with vast amounts of electronically stored information." *Id.* at 5-7 (Ex. 3).

Earlier this month, after full briefing, the Northern District of California in two separate glyphosate-related personal injury cases ordered the parties to proceed with bifurcated discovery leading to a potentially dispositive phase I *Daubert* hearing on the issue of general causation. *See Hardeman* Bifurcation Order (ordering same procedure also in *Stevick v. Monsanto*, No. 3:16-cv-02341-VC); Joint Submission of Bifurcation Briefing, ECF No. 42. Faced with the same scientific and regulatory history of glyphosate here at issue, the *Hardeman* court highlighted the "intuitive appeal" of sequencing discovery so the threshold causation issue could proceed first. Case Management Conference Hr'g Tr. at 4, *Hardeman v. Monsanto Co.,* No. 3:16-cv-00525-VC (N.D. Cal. May 3, 2016) (Ex. 4) ("*Hardeman* Hr'g Tr.").

The *Hardeman* court also found that opening discovery beyond general causation "would be a major discovery undertaking," *id.* at 6, and that "the knew or should have known part [of the plaintiff's allegations] could really get out of hand given the size of the company, and the number of people they have, and the number of records they have, and how much it would cost." *Id.* at 4. The Court rejected any suggestion that a plaintiff "would be prejudiced if we went with causation first." *Id.* at 7; *see also id.* at 12. The court explained that bifurcated discovery does not require a bifurcated trial (which Monsanto has not proposed in *Hardeman*

or this case), *id.* at 15, and does not necessitate changing any trial date, *id.* at 16, and that the plaintiff does not need discovery into marketing or other liability evidence to address general causation, *e.g.*, *id.* at 3-4, 6-7, 11-12, 17.

As another federal court held in granting a similar scheduling request, "targeted discovery and resolution of the issue of general causation serves the interest of all parties and the Court, promotes judicial efficiency, and prevents the potential waste of the parties' and the Court's resources." *See, e.g.*, Order, *In re Viagra Prods. Liab. Litig.*, 0:06-md-01724-PAM (D. Minn. June 30, 2006), ECF No. 38 (Ex. 5). Many other courts similarly have concluded that sequencing discovery so general causation or other threshold issues proceed first offers the most efficient path to the resolution of complex products liability claims.[1]

---

[1] *See, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1129 (9th Cir. 2002) (concluding district court "set forth a sensible discovery schedule" by deferring liability of the corporation until after general and specific causation); *id.* at 1134 ("district court's decision to bifurcate discovery on issues of causation was reasonable"); *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 652, 692 (D.N.J. 2008) (granting summary judgment after "Science First" motions regarding plaintiffs who lacked admissible expert testimony that their alleged exposures were capable of causing the alleged diseases, including cancer); *Perry v. Novartis Pharm. Corp.*, 564 F. Supp. 2d 452, 455, 463 (E.D. Pa. 2008) (granting summary judgment after phased discovery, concluding that plaintiff failed to present admissible expert testimony on general causation); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1184 (N.D. Cal. 2007) (granting summary judgment after phased discovery for all plaintiffs who claimed heart attacks or strokes from exposure to 200 mg/d dose or less because no admissible expert testimony supported that general causation claim); Order, *In re Incretin Mimetics Prods. Liab. Litig.*, No. 3:13-md-02452-AJB-MDD (S.D. Cal. Feb. 18, 2014), ECF No. 325 (Ex. 6) ("direct[ing] the parties' initial document production and motion practice" and "expert-related discovery" to "the threshold issue of whether general causation" exists); *In re Incretin*, 142 F. Supp. 3d 1108, 1132, at *18 (Nov. 9, 2015) (granting early summary judgment based on federal preemption after discovery limited to the dispositive issues of general causation and federal preemption).

## II. This Lawsuit Presents The Quintessential Case For Early Consideration Of General Causation.

This products liability action is the quintessential case for the consideration of causation early in the action – before millions of dollars and substantial resources are spent on other issues. Plaintiff Emanuel G. Giglio alleges that he developed NHL from alleged exposure to Monsanto's glyphosate-containing herbicides in California and seeks damages under California law. *See, e.g.*, Compl. ¶¶ 1, 7-8, 112-15, 127, 162. Each of plaintiff's claims fail as a matter of law if he cannot present admissible expert testimony that the chemical alleged to have caused the injury is in fact capable of doing so ("general causation"). *E.g.*, *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011) (citing *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 209 Cal. Rptr. 456, 460 (1985)), *cert. denied*, 132 S. Ct. 120 (2011). Plaintiff as the proponent of the evidence will have to show that his expert's general causation opinions satisfy "the exacting standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (citing *Daubert*, 509 U.S. 579).

As documented in numerous scientific analyses, glyphosate is not toxic to humans or animals.[2] The U.S. EPA has for decades found glyphosate to be "one of

---

[2] *See, e.g.*, Keith R. Solomon et al., *Human Health and Environmental Risks from the Use of Glyphosate Formulations to Control the Production of Coca in Colombia: Overview and Conclusions*, 72 J. Toxicology & Envtl. Health 914, 919 (2009) (Ex. 7); Keith R. Solomon et al., *Coca and Poppy Eradication in Colombia: Environmental and Human Health Assessment of Aerially Applied Glyphosate*, 190 Revs. Envtl. Contamination & Toxicology 43, 106 (2007) (Ex. 8); Gary M. Williams et al., *Safety Evaluation and Risk Assessment of the Herbicide Roundup and Its Active Ingredient, Glyphosate, for Humans*, 31 Reg. Toxicology & Pharmacology 117, 129 (2000) (reviewing over 188 documents either in published scientific literature or submitted to regulatory agencies assessing the safety of glyphosate, and concluding that glyphosate "is considered to be practically nontoxic by all these routes of exposure") (Ex. 9).

the most safely-used pesticides in the U.S.,"[3] and repeatedly has concluded that glyphosate exposure does not cause cancer, *see, e.g.*, EPA, *Glyphosate: Reregistration Eligibility Decision (RED) Facts*, 2 (Sept. 1993) (Ex. 11); EPA, *Glyphosate; Pesticide Tolerances*, 78 Fed. Reg. 25396-01, 25399 (May 2013) (Ex. 12). In its October 2015 "Final Report" on the "Evaluation of the Carcinogenic Potential of Glyphosate," the EPA's Cancer Assessment Review Committee ("CARC") endorsed the existing EPA classification of glyphosate as "Not Likely to be Carcinogenic to Humans."[4] The CARC explained that "[the] epidemiologic literature to date does not support a direct causal association" between glyphosate exposure and NHL and that animal studies showed "no evidence of carcinogenicity," reached "negative findings," were not "statistically significant," and are otherwise unreliable. EPA CARC Final Report at 8-9. The CARC report mirrors similar findings in 2015-2016 by the European Food Safety Authority ("EFSA"), the Health Canada Pest Management Regulatory Agency, the German Federal Institute for Risk Assessment ("BfR"), and the World Health Organization ("WHO") and United Nations Food and Agricultural Organization, each of which very recently also have rejected the claim that glyphosate causes cancer.[5]

---

[3] Letter from EPA Assistant Administrator Stephen L. Johnson to Secretary of State Colin Powell (Aug. 19, 2002) (Ex. 10).

[4] *See* Cancer Assessment Review Committee, Health Effects Division, Office of Pesticide Programs, U.S. Environmental Protection Agency, *Cancer Assessment Document – Evaluation of the Carcinogenic Potential of Glyphosate* at 10, 77 (Final Report October 1, 2015) ("EPA CARC Final Report") (Ex. 13). EPA posted this final report on its website in late April 2016 but took the report off its website in early May 2016, stating that it (EPA) has not completed its overall review of glyphosate safety. The EPA did not dispute that its Cancer Assessment Review Committee had issued its final report on glyphosate in October 2015.

[5] Letter from Bernhard Url, Exec. Director, EFSA, to Prof. Christopher J. Portier, Working Group Participant, IARC at 1 (Jan. 13, 2016) (Ex. 14); Summary of the Pest Management Regulatory Agency Proposed Re-evaluation Decision at 15 (PRVD2015-01) (Apr. 13, 2015) (Ex. 15); BfR, *The BfR has finalized its draft*

Bifurcation and an early *Daubert* hearing on this same general causation issue could prevent an enormous waste of time and resources of the parties and the Court on other issues and would not prejudice plaintiff. Indeed, in light of the court in *Arias* and other scientific and regulatory authorities finding no reliable scientific basis for the claim that glyphosate-containing herbicides can cause NHL, plaintiff here should welcome the Court's early evaluation of his causation claim before the potentially unnecessary expenditure of time, resources, and money on blanket discovery.

By bifurcating discovery, the Court can focus judicial and party resources on this threshhold causation issue and defer, and potentially avoid, burdensome discovery on such secondary issues as Monsanto's marketing, advertising, and sales activities for its glyphosate-containing products; the nature of plaintiff's alleged product exposure; alternative causes of plaintiff's alleged cancer; the details of plaintiff's medical treatments; and damages issues. The potential savings is obvious considering that large parts of the 216-paragraph Complaint in this case focus on such allegations.[6] *See, e.g.*, Compl. ¶¶ 8, 102, 112-15, 104, 118 (factual allegations regarding plaintiff); ¶¶ 29, 31-32 (allegations regarding national and world-wide product use spanning four decades); ¶¶ 13-15, 17-21, 23, 32, 40-43, 62, 91-92, 96-100, 103, 105-08, 117, 119-20 (allegations regarding marketing, advertising, sales, or profitability spanning four decades).

The potential burdens of unstructured discovery is evident as well in plaintiff's sections of the Joint Discovery Plan, ECF No. 43, where he asserts that he anticipates taking forty depositions of corporate employees, serving forty-five interrogatories, and seeking all documents relevant to any claim or defense if

---

*report for the re-evaluation of glyphosate* (Apr. 2, 2015) (Ex. 16); Food & Agric. Org. of the U.N., World Health Org., Joint FAO/WHO Meeting on Pesticide Residues at 2, Geneva, 9-13 May 2016, Summary Report (Ex. 17).

[6] Bifurcation will also avoid likely early Court intervention regarding the claimed relevance of many of these allegations to plaintiff's claims.

- 8 -
MONSANTO'S MOT. AND MEM. FOR SCHEDULING ORDER – 15cv2279

discovery is not bifurcated, *id.* at 6-7, 10. Much of this discovery and the corresponding millions of pages of documents including confidential business information and practices would be unnecessary if plaintiff ultimately fails to meet his general causation burden and would only detract from the fact and expert discovery efforts aimed at this threshold question.[7]

Monsanto thus proposes bifurcated discovery with Phase I discovery on general causation leading to a potentially dispositive *Daubert* hearing within the next 12 months. This Phase I discovery will result in significant discovery for the plaintiff. As in *Hardeman*, which involves the same plaintiff's counsel, Monsanto anticipates producing to Mr. Giglio's counsel millions of pages of records from non-custodial and custodial records collections and submitting numerous employees for depositions. *See id.* However, the parties would defer and potentially avoid altogether the substantial cost in time, resources, and money that would be required for unstructured discovery on secondary issues. Based on the custodial files collected to date, each individual Monsanto employee who may have relevant records has what is estimated to be millions of pages of records after de-duplication. *See* Decl. of Sam Merritt, NightOwl Discovery (Ex. 18). For all records produced, the records would need to be collected and reviewed by attorneys, including for relevancy and privilege at substantial cost.[8] Other substantial costs that may be limited or avoided by sequencing discovery include the costs and time involved with employee depositions on corporate advertising, marketing, sales, and other issues not relevant to general causation; preparing and

---

[7] Further, if additional proceedings are necessary, the information plaintiff learns during the causation phase should inform plaintiff's decisions for any subsequent proceedings on other issues so that those proceedings can be appropriately tailored and conducted in a more efficient manner.

[8] *See* RAND, *Where the Money Goes*, 11-12, 19, 17, 44 (2012) (explaining costs of corporate discovery, including the millions spent on liability discovery in products liability litigation) (Ex. 19).

deposing expert witnesses on issues other than general causation; case-specific discovery; and court proceedings to manage and resolve any disputes arising from these additional litigation activities.

Plaintiff's contrary proposal would have the Court wait to hear the dispositive, threshold question of general causation until less than a month before trial after all discovery and nearly all pretrial proceedings are complete. *See* Joint Discovery Plan at 18. Further, unstructured discovery will create even more inefficiencies here because Mr. Giglio's counsel, Monsanto's counsel and Monsanto would be proceeding on potentially conflicting discovery paths in this case and in *Hardeman/Stevick*, increasing the burden and potential for scheduling and other conflicts in each court. *See* 6/24/16 Scheduling Order (Chhabria, J.) (Ex. 20).[9]

## CONCLUSION

Accordingly, this Court should adopt a scheduling order that addresses "general causation" first.

DATED: June 28, 2016                              Respectfully submitted,

Joe G. Hollingsworth (appearance *pro hac vice*)
DC Bar No. 203273
Katharine R. Latimer (appearance *pro hac vice*)
DC Bar No. 405137
Eric G. Lasker (appearance *pro hac vice*)
DC Bar No. 430180

HOLLINGSWORTH LLP

/s/ *STEVEN R. PLATT*
Steven R. Platt
State Bar No. 245510
Richard A. Clark
State Bar No. 39558
PARKER, MILLIKEN, CLARK, O'HARA
& SAMUELIAN. P.C.

Attorneys for Defendant
Monsanto Company

---

[9] Aside from *Hardeman/Stevick*, discovery is proceeding in only one case involving a glyphosate cancer claim. While that state court recently denied bifurcation under the different state rules there at issue, *see* ECF No. 50, the court has not issued any scheduling order and it is not clear at what pace discovery in that case will proceed.

- 10 -
MONSANTO'S MOT. AND MEM. FOR SCHEDULING ORDER – 15cv2279

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is at PARKER, MILLIKEN, CLARK, O'HARA, & SAMUELIAN P.C., 555 S. Flower St., 30th Floor, Los Angeles, CA 90017.

On June 28, 2016 I served the foregoing document described as:

**MONSANTO COMPANY'S MOTION FOR SCHEDULING ORDER REGARDING GENERAL CAUSATION AND MEMORANDUM OF LAW IN SUPPORT**

on all other parties and/or their attorney(s) of record to this action by operation of the Court's CM/ECF system in accordance with L.R. 5.4(d). The Court's CM/ECF system sends an e-mail notification of the filings to the parties and counsel of record listed below who are registered with the Court's CM/ECF.

AIMEE H. WAGSTAFF (SBN 278480)
aimee.wagstaff@andruswagstaff.com
KATHRYN M. FORGIE (SBN 110404)
kathryn.forgie@andruswagstaff.com
ANDRUS WAGSTAFF, PC
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone: (720) 255-7623
Facsimile: (303) 376-6361

JOHN GOMEZ
JOHN P. FISKE
john@gomeztrialattorneys.com
fiske@gomeztrialattorneys.com
GOMEZ TRIAL ATTORNEYS
655 West Broadway
Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Fax: (619) 237-3496

*Attorneys for Plaintiff*

1  I declare under the penalty of perjury of the laws of the United States of
2  America that the foregoing is true to the best of my knowledge.  I declare that I am
3  a member of the bar of this Court.
4      Executed on the 28th of June, 2016, at Los Angeles, California.

/s/Steven R. Platt
Steven R. Platt (Bar No. 245510)
E-mail:  splatt@pmcos.com